UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELEANOR L. EVERETT,<br><br>               Plaintiff,<br><br>      v.<br><br>BANKERS LIFE AND CASUALTY CO.,<br><br>               Defendant. | CASE NO. C13-2246JLR<br><br>ORDER GRANTING SUMMARY JUDGMENT |

## I.   INTRODUCTION

This matter comes before the court on the Defendant Bankers Life and Casualty Co. ("Bankers Life") motion for summary judgment. (*See* Mot. (Dkt. # 1).) This is a slip-and-fall case: Plaintiff Eleanor L. Everett alleges that she injured her back in an incident that occurred in Bankers Life's supply room. Having considered the submissions of the parties, the balance of the record, and the relevant law, and no party

//

ORDER- 1

having requested oral argument,[1] the court GRANTS Bankers Life's motion for summary judgment.

## II.   BACKGROUND

Ms. Everett alleges that, in August 2010, she injured her back in an accident at work. The evidentiary record supporting this claim, however, is sparse.

Ms. Everett worked as an independent contractor for Bankers Life, selling insurance. (Everett Decl. (Dkt # 19-2) Ex. C at 2; Everett Dep. (Dkt. # 18-6) at 56:2-11.) In her deposition, Ms. Everett testified that on August 26, 2010, she entered the "resource room" at Bankers Life's officer to look for forms. (Everett Dep. at 39:14-40:21.) She testified that the room was lined with cupboards, equipment, and boxes so that there was "just barely room to walk through." (*Id.*) She was, however, unable to describe or sketch the layout of the room. (*See id.* at 47:22-52:1.) Pictures of the room as it exists today show a lighted, door-less room located at the end of a hallway; one side of the room contains a copy machine, the opposite side contains a counter with cabinets above and below, and the back of the room contains bookshelves. (*See* Dkt. ## 18-8 through 18-12.). Exhibit 1 shows two boxes on the floor against the back wall. (Dkt. # 18-8.) Ms. Everett testified that at the time of her accident, the "whole area" in front of the cabinets

---

[1] Oral argument is not necessary where the non-moving party would suffer no prejudice. *Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984). "When a party has had an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice in refusing to grant oral argument." *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991) (internal punctuation omitted). "In other words, a district court can decide the issue without oral argument if the parties can submit their papers to the court." *Id.* Here, the issues have been thoroughly briefed by the parties and oral argument would not be of assistance to the court. Accordingly, the court will not hold oral argument.

shown in Exhibit 1 "was full of boxes." (*See id.* at 53:14-54:7, 56:9-15, Ex. 1.[2]) She did not recall how many boxes there were; she did not recall how high the boxes were stacked; she "guessed" that the boxes were the same size as the two boxes in Exhibit 1; she "believed" that the boxes were filled with papers like the boxes in Exhibit 1; and she "suspected" that they were "ordinary brown cardboard boxes." (*Id.* at 54:8-55:6.)

With respect to the accident, Ms. Everett testified repeatedly that she tripped over a box and fell:

> Q: Okay. So, you're in this resource room looking for forms. What happened?
> A: I'm not absolutely positive. I tripped over something. I couldn't tell you now what it was, but I believe it was a box.
> Q: Okay. And what happened when you tripped?
> A: I don't understand.
> Q: Well, did you fall to the ground? Did you catch yourself before you hit the ground?
> A: I fell over—all I remember is falling, I think, over a box.

*Id.* at 40:22-41:7; *see also id.* at 42:5-10 (Q: . . . So, you tripped over what may have been a box; is that correct so far? A: Not entirely. Q: What have I misstated? A: You said "may have." I think I did trip over a box. There was nothing else to trip over."); *id.* at 44:7-9 ("Q: Okay. So, to go over this again, you tripped over what may have been a box. You're sure you tripped? A: Yes.").) She did not, however, recall whether she tripped

---

[2] Bankers Life submits as evidence five photographs that were apparently exhibits to Ms. Everett's deposition. (*See* Dkt. ## 18-8 through 18-12.) Although the exhibits used at the deposition were numbered 4 through 8, Bankers Life submits the photographs labeled as Exhibits 1 through 5 to Ms. Swanson's declaration. (*See* Dkt. ## 18-8 through 18-12; Everett Dep. at 52:2-24.) By comparing the photographs with Ms. Everett's descriptions in her deposition, it appears that when Ms. Everett referenced Exhibit 5 to describe the location of the boxes, she was referring to the photograph that is currently labeled Exhibit 1 to Ms. Swanson's declaration (Dkt. # 18-8). (*See also* Swanson Decl. (Dkt. # 18-7) ¶ 13.)

over the boxes that she previously testified were lined in front of the cabinets, or over some other boxes. (*Id. at* 56:3-25.)

She does not recall why she tripped or what she was in the process of doing when she tripped. (*Id.* at 47:1-18; 55:16-19 ("Q: Can you tell me in your own words what caused you to trip, however you can explain it to me, if you recall. A: I don't recall.").) Her testimony was inconsistent as to whether she fell to the ground after she tripped. (*Compare id.* at 41:8-15 ("Q: And then did you hit the ground? A: There was no ground. Q: So, when you say you fell over this box, was the box in front of a cabinet or something? A: Right, exactly. Q: So, when you fell, did you catch yourself on the cabinet? A: No, I don't know.") *and id.* at 44:10-11 (Q: You did not fall to the ground? A: I never fell to the ground.") *with id.* at 46:17-21 ("Q: So, tell me what happened when you tripped. A: I know that I fell. Q: You did fall? A. Well, I was on the floor, so I must have fallen.").) To the extent she maintained that she fell to the ground, she was unable to recall how the fall had happened:

> Q: Okay. All right. And I'm still having trouble visualizing how you end up on the floor by tripping over boxes that are up against a cabinet.
> A: Geez, it's been a long time. I don't recall.

(*Id.* at 57:1-4; *see also* at 57:20-58:2.)

The only admissible evidence that Ms. Everett has provided is her own declaration and two hospital intake records. With respect to the cause of the accident, Ms. Everett's declaration states in full:

> We had a resource room at Banker' life [sic] that was very small and there were cupboards and boxes throughout the room along with copying equipment and you had to lean over these items in order to get supplies. As

> I was reaching over the boxes to get some supplies some of the boxes fell on me and knocked me to the floor. I do not recall if I was unconscious or not, all I remember was being picked off the floor by people who heard me fall. I started to have immediate pain in my back throughout down [sic] the left side of my body. Other people at Banker's [sic] Life complained about the resource room because it was unsafe and very difficult to retrieve supplies out of the room.

(Everett Decl. Ex. A.)[3]

With respect to the intake records, the hospital that Ms. Everett visited three days after the accident filled out a Report of Industrial Injury or Occupational Disease. (Everett Decl. Ex. B at 1.) This report describes the occurrence of the injury as follows: "In resource room, boxes were stacked around room, fell over boxes." *Id.* The Patient Admit Fact Sheet, filled out by the hospital and Ms. Everett that same day, describes the accident cause as "fell down moving boxes." (*Id.* at 2.) The Fact Sheet also states that the incident occurred at "home." (*Id.* at 2, 3.).

Ms. Everett claims that, as a result of her accident, she has experienced continual back pain, incurred medical bills in excess of $100,000.00, and undergone back surgery and physical therapy. (Interrog. Resp. (Dkt. # 18-3); Everett Dep. at 38:1-8.) But she has

//

---

[3] Ms. Swanson, Bankers Life's Office Administrator, testifies that the resource room has not changed in lighting or arrangement since August 2010; that the lighting consists of fluorescent fixtures; that unpacked boxes are placed at the back wall as shown in Exhibit 1; that empty boxes are immediately discarded; that she does not recall any occasion where boxes were stacked in front of the cabinets; that she does not recall any occasion where boxes were stacked high enough to fall on someone; and that no one, including Ms. Everett, has complained to her that the room was "unsafe." (*See* Swanson Decl. ¶¶ 6-15.) For the purposes of summary judgment, however, the court must view all of the evidence in the light most favorable to Ms. Everett, and must not make credibility determinations. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). According, the court credits Ms. Everett's testimony above.

ORDER- 5

not set forth any affirmative evidence regarding a medical diagnosis or treatment, or otherwise substantiating her damages claim. (*See generally* Dkt.)

Nonetheless, Ms. Everett brings a claim for negligence against Bankers Life. (*See* Compl. (Dkt. # 1-1).) Bankers Life has moved for summary judgment. (*See* Mot.) That motion is now before the court.

### III. ANALYSIS

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where the moving party demonstrates (1) the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of an issue of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or, (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In determining whether the factfinder could reasonably

find in the nonmoving party's favor, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, a jury "is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978). Moreover, a "non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, summary judgment for the moving party is proper. *Nissan Fire*, 210 F.3d at 1106.

**B.     Motion to Strike and for Sanctions**

As a preliminary matter, the court addresses Bankers Life's motion to strike and for sanctions. (Mot. to Strike (Dkt. # 21).) Ms. Everett originally filed two additional declarations from third parties in support of her opposition to the motion for summary judgment. (*See* Dkt. ## 19-1, 19-3.) Bankers Life moves to strike these declarations pursuant to Federal Rule of Civil Procedure 37(c) because Ms. Everett did not identify the witnesses in her initial disclosures. (*See* Mot. to Strike at 1-4; Simmons Decl. (Dkt. # 21-1) ¶ 6.) Ms. Everett has now withdrawn these declarations. (Everett Resp. to Mot. to Strike (Dkt. # 23).) As such, Bankers Life's motion to strike is moot.

Bankers Life also moves for case-dispositive sanctions, claiming that the declaration filed under Chuck Taylor's name on December 15, 2014, is fraudulent. (Mot. to Strike at 5-6; *see also* (False Taylor Decl. (Dkt. # 19-1).) A district court "has the

ORDER- 7

1   inherent authority to impose sanctions for bad faith, which includes a broad range of

2   willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001); *see also*

3   *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107-08 (9th Cir. 2002), *as amended* (Feb.

4   20, 2002); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980). Upon a finding of bad

5   faith, courts can levy an assortment of sanctions under their inherent power, including

6   monetary awards, attorneys' fees, adverse inference jury instructions, and even dismissal

7   of claims. *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1135 (N.D.

8   Cal. 2012) (collecting cases); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

9   Sanctions should be commensurate to the sanctioned party's degree of fault and the other

10  party's prejudice. *See Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. CIV. 10-

11  0541-GPC WVG, 2013 WL 6159177, at *7 (S.D. Cal. Nov. 25, 2013). "A trial court's

12  inherent powers unquestionably include the power to assess attorney's fees against any

13  counsel who willfully abuses judicial process or otherwise conducts litigation in bad

14  faith." *Barnd v. City of Tacoma*, 664 F.2d 1339, 1342 (9th Cir. 1982).

15          The false declaration is electronically signed "/s/ Chuck Taylor" and purports to be

16  signed "under penalty of perjury of the laws of the State of Washington." (False Taylor

17  Decl. at 2.) Mr. Taylor, however, has provided an authentic declaration stating that he

18  "did not authorize the Declaration that was filed in this case under my name on

19  December 15, 2014 as Document 19-1." (Taylor Decl. (Dkt. # 22-1) ¶ 3.) He testifies

20  that he "did not see the Declaration at any time until counsel for Bakers Life sent it to

21  [him] as an e-mail attachment." (*Id.* ¶ 4.) He also states that when Ms. Everett

22  telephoned and asked him to be a witness for this case, he told her that he "did **not** want

to sign anything for this lawsuit." (*Id.* ¶ 8 (emphasis in original).)  Nonetheless, on December 15, 2014, Ms. Everett left him a voice message "advising that she was going to file something anyway." (*Id.* ¶ 9.)  Mr. Taylor's authentic declaration is signed with his handwritten, cursive signature. (*Id.* at 3.)

For her part, Ms. Everett contends that Mr. Taylor gave her a handwritten statement, which she faxed to her attorney to be typed up and filed.  (2d Everett Decl. (Dkt. 24); Stmt. (Dkt. # 24-1); *see generally* Resp. to Mot. to Strike (Dkt. # 23).)  Ms. Everett claims that she was justified in filing the declaration in Mr. Taylor's name because he did not tell her that he did not want the statement to be used, so she "simply used the statements . . . provided to [her]." (*Id.*)  The court notes that the signature on the handwritten statement supposedly provided by Mr. Taylor is in print, rather than cursive, and does not match the signature on Mr. Taylor's authentic declaration.  (*Compare* Stmt. *with* Taylor Decl.)  The docket shows that Ms. Everett's attorney typed up the statement, electronically signed Mr. Taylor's name, and filed the statement at docket number 19-1.  (*See also* Resp. to Mot. to Strike.)  The attorney, however, procured neither permission from Mr. Taylor to sign Mr. Taylor's name nor confirmation from Mr. Taylor that the information in the declaration was true and correct.  (*See id.*; Taylor Decl. ¶¶ 3-4.)  In fact, Mr. Taylor testifies that some of the information is incorrect.  (*See* Taylor Decl. ¶ 7.)

Even accepting Ms. Everett's version of events as true, the purported declaration is fraudulent:  it purports to be signed by Mr. Taylor under penalty of perjury when Mr. Taylor did not, in fact, sign the declaration, and does not, in fact, "declare or affirm that the [contents of the declaration are] true and correct." (*See* False Taylor Decl.)  Signing

someone else's name to a court filing without their permission is willful, deceitful conduct. So, too, is attempting to mislead the court by falsely representing that a witness has attested to certain facts under oath. Therefore, the court finds that Ms. Everett's counsel's actions constitute bad faith or conduct tantamount to bad faith. *See Barnd*, 664 F.2d at 1342; *Fink*, 239 F.3d at 992. Although the prejudice to Bankers Life is largely alleviated now that the declaration has been withdrawn, the court finds that Bankers Life is at least entitled to the attorneys' fees associated with its motion to strike the fraudulent declaration. *See Barnd*, 664 F.2d at 1342. Bankers Life shall file a separate motion detailing its requested fees for the court's consideration.

**C.      Sham Affidavit**

The court turns next to the subject of Ms. Everett's declaration. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). "This sham affidavit rule prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (internal punctuation omitted) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). The sham affidavit rule, however, "should be applied with caution." *Van Asdale*, 577 F.3d at 998. To apply the rule, the court must first "make a factual determination that the contradiction was actually a 'sham.'" *Id.* Second, "the inconsistency between a party's deposition

ORDER- 10

testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 998-999. Therefore, the "non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Id.* (internal punctuation omitted) (quoting *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995)).

The court finds that the portion of Ms. Everett's declaration describing her accident is a sham. (*See* Everett Decl. Ex. A.) Regarding the accident, Ms. Everett's declaration states in full: "As I was reaching over the boxes to get some supplies some of the boxes fell on me and knocked me to the floor." (*See id.*) This statement is not a minor inconsistency or clarifying testimony. Rather, Ms. Everett's assertion that she was knocked over by falling boxes contradicts her previous deposition testimony that she fell because she tripped over a box on the floor. (*See* Everett Dep. at 44:7-9 ("Q: Okay. So, to go over this again, you tripped over what may have been a box. You're sure you tripped? A: Yes.").) The distinction between the two is clear and unambiguous. *Van Asdale*, 577 F.3d at 998. Ms. Everett, however, offers no explanation as to why she has changed her story. (*See* Resp.; Everett Decl.) There is no suggestion that Ms. Everett's new testimony is based on newly discovered evidence or that her prior deposition testimony was an "honest discrepancy" or mistake. *See Van Asdale*, 577 F.3d at 998. This conclusion is especially apt given that Ms. Everett repeatedly insisted during her deposition that she had tripped over a box on the floor, and never once mentioned boxes

falling onto her and knocking her to the floor. (*See* Everett Dep. 40:22-41:7; 42:5-10; 44:7-9.) Additionally, the hospital intake records describe the cause of accident to be tripping over a box. (*See* Everett Decl. Ex. B at 1-3.) But no evidence in the record supports Ms. Everett's new version of the story. Therefore, the court strikes the portion of Ms. Everett's declaration regarding the cause of her accident as a sham, and will not consider it in rendering its decision on Banker Life's motion for summary judgment. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (affirming finding that a declaration was a sham because "the deponent remember[ed] almost nothing about the events central to the case during his deposition, but suddenly recall[ed] those same events with perfect clarity in his declaration in opposition to summary judgment without any credible explanation as to how his recollection was refreshed"); *see also Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 289 (9th Cir. 2013) ("[Plaintiff] cannot create a genuine issue of material fact and thus avoid summary judgment simply by swearing to facts that are contradicted by the record.").

**D.    Washington Premises Liability**

Finally, the court reaches the merits of the motion. A cause of action for negligence requires the plaintiff to establish "(1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Pedroza v. Bryant*, 677 P.2d 166, 168 (Wash. 1984). According to premises liability theory, a landowner owes an individual a duty of care based on the individual's status (invitee, licensee, or trespasser) upon the land. *Curtis v. Lein*, 239 P.3d 1078, 1081 (Wash. 2010). Employees of independent contractors hired by landowners are invitees

ORDER- 12

on the landowners' premises. *Kamla v. Space Needle Corp.*, 52 P.3d 472, 477 (Wash. 2002).

Washington has adopted sections 343 and 343A of the *Restatement (Second) of Torts* to define a landowner's duty to invitees. *Kamla*, 52 P.3d at 477. The Restatement provides that a possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land only if the possessor "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." *Id.* (quoting *Restatement (Second) of Torts* § 343). Additionally, "a possessor of land is not liable to his or her invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* (quoting *Restatement (Second) of Torts* § 343A (emphasis and brackets omitted)).

### E. Ms. Everett's Claim

Ms. Everett's claim for negligence fails because, on the record before the court, a reasonable fact-finder could not find that the state of Bankers Life's resource room involved an "unreasonable risk of harm." *See id.* Viewed in the light most favorable to Ms. Everett, the available evidence shows only that the room was crowded with furniture and equipment, and an unknown number of boxes occupied the floor space in front of the cabinets. (*See* Everett Decl. Ex. A; Everett Dep. 39:14-40:21; 53:14-54:7, 56:9-15; Dkt.

# 18-8.) This, without more, is insufficient to show an unreasonable risk of harm. In *Charlton v. Toys R Us*, the Washington Court of Appeals affirmed a summary judgment finding of no negligence because although the plaintiff had shown that the entryway floor was wet, she "failed to present any evidence that the floor in the entryway of the Toys R Us store presented an unreasonable risk of harm when wet." *Charlton v. Toys R Us— Delaware, Inc.*, 246 P.3d 199, 203 (2010) ("For that reason alone, summary judgment was proper.") The court found that the trial court properly "rejected [the plaintiff's] position that that a wet floor is *always* a dangerous condition, and that she was therefore excused from presenting evidence of an unreasonable risk created by this particular wet floor." *Id.*

Similarly, here, it is possible that, in certain configurations, a room crowded with boxes could present a dangerous condition with an unreasonable risk of harm. But it is pure speculation as to whether such configuration existed in Bankers Life's supply room. *See British Airways Bd.*, 585 F.2d at 952. Ms. Everett has put forth no evidence of the unreasonable risk created by these particular boxes. In fact, she does not even remember how high the boxes were stacked, whether the room was lighted, or how she tripped. (Everett Dep. 42:11-43:3, 47:1-18, 54:8-55:6, 55:16-19, 56:3-25, 57:1-4 "(Q. . . . And I'm still having trouble visualizing how you end up on the floor by tripping over boxes that are up against a cabinet. A. Geez, it's been a long time. I don't recall."); *see also Little v. Countrywood Homes, Inc.*, 133 P.3d 944, 947 (Wash. Ct. App. 2006) (finding no probable cause because the plaintiff did not remember how his jobsite accident occurred).

ORDER- 14

The position that boxes in crowded rooms are *always* a dangerous condition, however, is impermissible. *See Charlton*, 246 P.3d at 203.

Ms. Everett's declaration stating that "other people at Banker's [sic] Life complained about the resource room because it was unsafe" does not rescue her claim. (*See* Everett Decl. Ex. A.) "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993); *see also F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Ms. Everett presents no evidence, other than her bald assertion, that the room was "unsafe." But "a non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."[4] *Stefanchik*, 559 F.3d at 929. Because Ms. Everett raises no more than a scintilla of evidence supporting the essential element of "unreasonable risk," summary judgment is appropriate. *See Nissan Fire*, 210 F.3d at 1106.

### IV. CONCLUSION

For the foregoing reasons, the court GRANTS Bankers Life's motion for summary judgment (Dkt # 18). The court GRANTS in part and DENIES in part Bankers Life's

---

[4] In addition, Ms. Everett's statement that other people had complained that the supply room was unsafe is hearsay. *See* Fed. R. Evid. 801. This statement would be inadmissible at trial to prove the truth of the matter asserted. *See* Fed. R. Evid. 802. As such, it is not an appropriate basis for opposing a summary judgment motion. *See* Fed. R. Civ. P. 56(c)(2). For this reason also, summary judgment is appropriate.

ORDER- 15

motion to strike and for sanctions (Dkt. # 21). Bankers Life may bring a separate motion for attorneys' fees as described above.

Dated this 9th day of January, 2015.

JAMES L. ROBART
United States District Judge

ORDER- 16